CORRECTED

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-2064V**
UNPUBLISHED

| | |
|---|---|
| MARIAH CHATMAN, | Chief Special Master Corcoran |
| Petitioner, | Filed: July 19, 2024 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Ruling on the Record; Entitlement, Damages; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.*

*Shelly Jock, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On December 30, 2020, Mariah Chatman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"). Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Because entitlement was contested, the parties were ordered to file briefs addressing whether Petitioner has established a Table case, and setting forth their respective arguments on damages should I find entitlement in favor of Petitioner. The parties were subsequently notified that I would resolve this dispute via an expedited "Motions Day" hearing, which ultimately took place on June 28, 2024

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons described below, I find Petitioner is entitled to compensation, and I award **$125,000.00** for actual pain and suffering, plus **$6,984.54** for unreimbursed medical expenses.

## I.      Medical Records

Ms. Chatman received a flu vaccine on October 11, 2018, at Clarendon McLeod Hospital, where she worked as a volunteer. Ex. 2. Approximately three weeks later, she was seen by her primary care provider ("PCP") regarding a tooth problem. There is no mention of shoulder pain at that time. Ex. 3 at 8.

Petitioner saw her PCP again on January 11, 2019, complaining of shoulder pain. Ex. 3 at 7. She stated that she received a flu vaccine in October and had experienced ongoing left shoulder pain since then. *Id.* On March 25, 2019, Petitioner again complained of shoulder pain. Ex. 3 at 6.[3] A Decadron injection was administered in Petitioner's left shoulder. *Id.*

Thereafter, Petitioner attended nineteen physical therapy sessions between March 29 and June 20, 2019. Ex. 4 at 11-44. At the initial evaluation, Petitioner reported that she got "the flu shot in lateral/posterior arm (L) in Oct. 2018" and the "[p]ain never went away…." *Id.* at 42. An MRI on June 7, 2019 showed a partial-thickness bursal surface tear of her left shoulder. Ex. 5 at 1. By June 20, 2019, Petitioner was discharged from physical therapy having met her goals on June 20, 2019, but she still reported slight pain with movement and daily living activities. Ex. 4 at 11.

Petitioner was again seen for shoulder pain on August 20, 2019, stating that she had pain "[s]ince October", and linking her pain to the October flu vaccination. Ex. 3 at 2. She was diagnosed with left shoulder bicipital tendinitis and referred to an orthopedist. *Id.* Petitioner also sent a letter to the hospital administrator on September 6, 2019, reporting that she was injured on October 11, 2018 following a flu vaccine. Ex. 6 at 1-2. Further, she stated that her shoulder started hurting "[w]hen the Registered Nurse administered the shot" and "it has never stopped." *Id.* at 1.

On September 11, 2019, Petitioner saw orthopedist Dr. Wagner for left arm pain after a flu vaccination the "previous October". Ex. 7 at 9-10. She was assessed with tendinitis and given a steroid injection. *Id.* Petitioner returned to Dr. Wagner on October 14, 2019, stating that the steroid injection had helped but her pain returned. *Id.* at 8. She

---

[3] The record notes Petitioner complained of right shoulder pain; however it is evident that Petitioner's left shoulder was examined and treated. Ex. 3 at 6.

was assessed with a partial tear of the supraspinatus tendon, advised to take anti-inflammatories three times a day and to follow-up with her primary care doctor. *Id.*

Petitioner saw her PCP on November 7, 2019, reporting continued shoulder pain. Ex. 8 at 6. She was referred to physical therapy, and attended sixteen sessions between November 19, 2019, and February 10, 2020. Ex. 9 at 10-60. Later, between May 29, 2020 and October 5, 2020, Petitioner was seen for shoulder pain on four occasions and received multiple injections, including three Decadron injections. Ex. 8 at 2-5.

Petitioner saw Dr. Art Jordan, an orthopedist, on November 20, 2020 for a second opinion regarding left shoulder pain. Ex. 13 at 21. She reported that her pain had persisted for two years and attributed it to "a time where she had a vaccination given in her arm." *Id.* Petitioner was diagnosed with a tear of the left supraspinatus tendon and impingement syndrome and administered a steroid injection. Between December 16, 2020 and February 12, 2021, Petitioner attended an additional 12 physical therapy sessions. Ex. 14. On April 9, 2020, Petitioner returned to Dr. Jordan for shoulder pain. Ex. 13 at 16-17. Given she had exhausted conservative treatment, she was referred to an orthopedic surgeon.

Petitioner saw Dr. Patrick Denton on May 5, 2021, for shoulder pain that began after receiving a flu vaccine in October of 2018. Ex. 13 at 13-15. Dr. Denton diagnosed Petitioner with impingement syndrome and an incomplete rotator cuff tear. Thereafter, she underwent left shoulder arthroscopic surgery on October 5, 2021. Ex. 15 at 73-74. The post-operative diagnoses included left shoulder impingement, degenerative AC joint with "inferior osteophyte", grade three synovitis, and degenerative type II Slap tear. *Id.* at 73. She attended twelve additional physical therapy sessions between October 27, 2021, and January 11, 2022. Ex. 21 at 21-63.

On July 20, 2020, Petitioner saw Dr. Denton for a follow-up. Ex. 23 at 18-19. She continued to complain of left shoulder pain, however she had full range of motion. Dr. Denton stated that her impingement syndrome may be impacted by bone spurs and obesity. *Id.* Another steroid injection was administered.

The last record was from October 24, 2022, wherein Petitioner complained of occasional pain and "electricity-like" feelings in her arm. Ex. 24 at 9-11.

## II.    Affidavit Evidence

Petitioner submitted an affidavit in support of her petition describing her course of treatment and how her injury impacted her life. Ex. 1. Petitioner also stated that she had

an appointment with her physician on November 1, 2018, for a tooth problem. *Id.* at 2. At that time, Petitioner stated that she mentioned her shoulder pain but was told "it could take months to heal." *Id.*

### III.       Parties' Arguments

Petitioner argues that she is entitled to compensation because she meets requirements for a SIRVA as described in the Vaccine Injury Table. Petitioner's Motion for Ruling on the Record Regarding Entitlement and Damages ("Mot."), ECF No. 42, at 15-21. Respondent argues that Petitioner has not met the Table requirements for a SIRVA, and has failed to establish onset of her injury was within 48 hours of vaccination Act. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 43, at 3-6.

### IV.       Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[4] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. *Section* 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

## A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

### 1. No Prior Left Shoulder Condition or Injury Would Explain Petitioner's Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on January 11, 2019, and noted that she received a flu vaccine in October and had ongoing pain since then. Ex. 3 at 7. Thereafter, Petitioner continued to link her shoulder pain temporally to the flu vaccine. *See* Ex.4 at 42 (record from March 29, 2019, stating that Petitioner's pain "never went away" following her flu vaccine in October of 2018); Ex. 6 at 1-2 (letter to a hospital administrator from September 6, 2019, stating that she was injured in October 11, 2018 following a flu vaccine); Ex. 3 at 2 (record from August 20, 2019, stating that she had pain "[s]ince October" and linking it to her flu vaccination).

Respondent argues that Petitioner identified no contemporaneous records falling within the 48-hour post-vaccination period and did not report shoulder pain until January 11, 2019 (100 days after vaccination). Opp. at 3. Further, Respondent notes that Petitioner saw her PCP within weeks of her vaccination but failed to report shoulder pain. Opp. at 3. However, that appointment was for a tooth problem, and it is not unreasonable that either Petitioner did not mention her shoulder pain, or the treater failed to record it in the medical record. *See* Ex. 1 at 2 (Petitioner's affidavit stating that she mentioned her shoulder pain to her PCP on November 1, 2018 during an appointment related to tooth care).

Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to seek medical care within 48 hours of vaccination in order to prove Table onset. Additionally, and as noted above, Petitioner consistently linked her shoulder pain to the September vaccination. And it is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

## B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 11, 2018, in the United States. Ex. 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1 at 4; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## V.    Damages

Petitioner is seeking $130,000.00 for pain and suffering, plus $6,984.54 for medical expenses. Mot. at 40. Respondent argues that $100,000.00 is an appropriate amount for pain and suffering but does not dispute the $6,984.54 for medical expenses. Opp. at 8.

After listening to the arguments of both sides, I orally announced my ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section

12(d)(3)(A), at the conclusion of the June 28, 2024 hearing. An official recording of the proceeding was taken by a court reporter, although a transcript has not yet been filed in this matter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

In another recent decision I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022) to the instant ruling and decision. Additionally, the official recording of my oral ruling includes my discussion of various comparable cases as well as specific facts relating to Petitioner's medical history and experience that further informed my decision awarding damages herein.

## VI.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Ms. Chatman was a competent adult with no impairments that would impact the awareness of her injury. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties in written documents, and the arguments presented during the Motions Day hearing.

Petitioner cites to a number of damages decisions involving SIRVA injuries that awarded between $110,000.00 to $125,000.00 for pain and suffering, including two that involved a delay in seeking treatment.[5] Mot. at 31-36. Petitioner notes that Ms. Chatman suffered a moderate to severe SIRVA over approximately four years, and her treatment involved multiple cortisone and Decadron injections, an MRI, arthroscopic surgery, and sixty physical therapy sessions. *Id.* 36-37.

Respondent argues that Petitioner's delay in seeking treatment and multiple gaps should reduce the award in this case. Opp. at 8-11. In support, he cites to two cases that involved initial delays of two to five months before petitioner sought treatment. awarding under $100,000.00. *Gray v. Sec'y of Health & Hum. Servs.*, No. 20-1708, 2022 WL 6957013 (Fed. Cl. Spec. Mstr. Sept. 12, 2022) (awarding $110,000 for pain and suffering after the petitioner delayed 52 days in seeking treatment); *Shelton v. Sec'y of Health & Hum. Servs.*, No. 19-279, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for pain and suffering).

---

[5] *Vaccaro v. Sec'y of Health & Hum. Servs.,* No. 19-1883V, 2022 WL 662550, at *3 (Fed. Cl., 2022) (awarding $110,000 in pain and suffering); *Smith v. Sec'y of Health & Hum. Servs.,* No. 19-1384V, 2022 WL 3012509, at *4 (Fed. Cl., 2022) (awarding $125,000 in pain and suffering).

The record in this case best supports the conclusion that Ms. Chatman suffered a moderate SIRVA for approximately four years. There was a significant delay in seeking treatment, but she ultimately treated for an extended period. Additionally, Petitioner's treatment was extensive, consisting of seven injections, sixty physical therapy sessions, an MRI, and arthroscopic surgery. However, her pain during physical therapy was often mild to moderate, reported as three to four out of ten during 2019 and one to four out of ten during 2020.

Respondent's proposed award of $100,000.00 does not give sufficient credence to the seriousness of Petitioner's injury and the cases he cites are outliers in the context of SIRVA damages. And a case like *Shelton* is an outlier – there, the petitioner waited five months before seeking treatment, a lengthy delay that reasonably impacted the pain and suffering award. *Shelton*, 2021 WL 2550093 at *5, *8.

Here, Petitioner's citation to *Smith* is the closest comparable decision, as it balances the severity of the SIRVA against delay in treatment. The *Smith* petitioner reported pain 42 days after vaccination, and ultimately underwent surgery. However, he reported lingering effects of his injury five years post vaccination. Additionally, the course of treatment was not as extensive as here, consisting of one cortisone injection, twenty-eight physical therapy sessions in addition to surgery. While *Smith* involved less treatment, Ms. Chatman had numerous gaps in treatment and reported only mild-to-moderate pain throughout 2019 and 2020.

Balancing the severity of Petitioner's SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$125,000.00** in compensation for actual pain and suffering is reasonable and appropriate in this case.

## Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I find Petitioner is entitled to compensation. Further, I award Petitioner a lump sum payment of $131,984.54 (representing $125,000.00 for actual pain and suffering, plus $6,984.54 for unreimbursed medical expenses) in the form of a check payable to Petitioner.**

This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master